IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | * | CHAPTER 13 |
| JULIA YATISHOCK DYCKMAN, | * | |
|     Debtor | * | CASE NO. 1:10-bk-08586 MDF |
| | * | |
| JULIA YATISHOCK DYCKMAN, | * | |
|     Movant | * | |
| | * | |
| v. | * | |
| | * | |
| DENNIS V. DYCKMAN, | * | |
|     Respondent | * | |
| | * | |

**OPINION**[1]

In an earlier agreed to order, this Court extended the automatic stay, but authorized Dennis V. Dyckman, the ("Respondent"), to pursue supplemental divorce and equitable distribution claims in state court. Julia Yatishock Dyckman ("Debtor") now seeks clarification of the scope of relief granted in the order extending the stay and requests enforcement of the stay. For the reasons set forth below, Debtor's motion for clarification of the order will be granted, but the request for enforcement of the stay will be denied.

**I. Procedural History and Factual Findings**

Debtor and Respondent were married on August 18, 1973. On August 3, 2007, Debtor initiated a divorce action by filing a Complaint for Divorce in the Court of Common Pleas of Dauphin County, Pennsylvania. On November 19, 2008, Debtor and Respondent entered into a marital settlement agreement (the "MSA"), which was read into the record at a hearing before the divorce master. The divorce decree incorporating the MSA was entered on December 5, 2008.

---

[1] This Court has jurisdiction over this core proceeding under 28 U.S.C. § 157(b)(2)(G). This Opinion constitutes findings of fact and conclusions of law made pursuant to Federal Rules of Bankruptcy Procedure 7052 and 9014(c).

Under the terms of the decree, Debtor obtained an interest in two pension plans held by Respondent. A qualified domestic relations order was entered in regard to the pension with GPU/First Energy plan (the "GPU/QDRO") and a military domestic relations order was entered in regard to the military pension (the "Military DRO") (collectively the "Pension Orders"). The Pension Orders recognized Debtor's right to receive a portion of the benefits available under each plan as an alternate payee. The Military DRO stated that the Respondent was assigning to Debtor "an interest in the [Respondent's] disposable military retired pay." It also specified that the Military DRO was intended to "qualify under the Uniformed Services Former Spouses' Protection Act."

Debtor filed a voluntary Chapter 13 petition with this Court on October 21, 2010. Previously, Debtor had filed a bankruptcy case that was pending during the year prior to the filing of the case at bar. Because Debtor had an open case during the prior year, the automatic stay would have terminated thirty days from the current petition date unless she obtained an extension of the stay. *See* 11 U.S.C. § 362(c)(3)(A) and (B). Therefore, on October 22, 2010, Debtor filed a motion for extension of the automatic stay. In response to Debtor's motion, Respondent filed an objection to the extension of the stay, arguing that it prevented him from proceeding in state court with a petition for special relief that had been filed before the first bankruptcy case had been commenced.

This Court convened a hearing on Debtor's motion on November 9, 2010, at which time the parties announced that they had resolved the objection and proceeded to place the terms of a proposed order on the record. The consensual order extending the stay and providing for limited relief to Respondent was entered on November 17, 2010 (the "Stay Order").

The Stay Order provided as follows:

> The automatic stay imposed by 11 U.S.C. §362 shall be and is hereby modified to allow Dennis Dyckman to initiate or proceed with and fully litigate supplemental divorce and equitable distribution claims against the Debtor in the Court of Common Pleas of Dauphin County, Pennsylvania, including but not limited to claims raised in a certain petition for Special Relief Re: Enforcement of Marital Settlement Agreement to No 2007-CV-7759-DV, **provided, however,** that the automatic stay shall continue to remain in effect to prevent Dennis Dyckman from taking any action to obtain possession of or to exercise control over property of Debtor's Bankruptcy Estate pending further order of this Court.

(Stay Order, Case No. 1:10-bk-08586 MDF Julia Yatishock Dyckman, Docket #22 (emphasis in original)).

Respondent's petition was heard by Judge Bratton on December 30, 2010. Testimony was taken from both Debtor and Respondent. On April 6, 2011, Judge Bratton issued an Order (the "April 6 Order") in which he made several findings of fact and ordered relief in favor of Respondent. Judge Bratton found that Debtor had breached the MSA by failing to refinance two mortgages on the former marital home within the six months of the hearing before the divorce master. He opined that the Stay Order prohibited him from forcing the sale of the marital residence, which Respondent had initially requested in his petition for special relief. Judge Bratton determined, however, that the Stay Order did not prevent him from reexamining Debtor's rights in Respondent's pensions. Therefore, he vacated the Military DRO and GPU/QDRO, thereby terminating Debtor's interest in Respondent's military and civilian pensions. Although her interest in the pensions was terminated, Judge Bratton permitted Debtor to retain, as her sole and separate property, all payments previously received.

On April 8, 2011, Respondent's divorce counsel informed the Defense Finance and Accounting Service that Debtor should be removed as alternate payee for Respondent's military

3

retirement benefits. (Correspondence on Behalf of Respondent to Defense Finance and Accounting Service, 1:10-bk-08586 MDF Julia Yatishock Dyckman, Docket #66-12).[2]

Debtor appealed the April 6 Order raising two issues: (1) whether the trial court erred in finding that Debtor was in breach of the MSA; and (2) whether the trial court erred by vacating the two Pension Orders. Pursuant to Pennsylvania Rule of Appellate Procedure 1925(a), Judge Bratton issued an opinion (the "June 23 Opinion") in support of the April 6 Order. In the June 23 Opinion, Judge Bratton explained that because his options to address Debtor's breach were limited, he chose to vacate the Pension Orders, holding that Debtor's interest in the pensions were not "assets subject to bankruptcy[.]"

On May 19, 2011, Debtor filed a motion to determine the scope of the automatic stay and to enforce this Court's Stay Order.[3] Debtor argued that Judge Bratton's April 6 Order violated the stay by terminating Debtor's interest in Respondent's pensions because the November 17 Order provided that Respondent was stayed from "taking any action to obtain possession of or to

---

[2]No information was placed on the record as to whether Respondent's divorce counsel also notified the plan administrator for the GPU/First Energy plan that Debtor's interest in the pension had been terminated. There is scant evidence in the record about the plan, but in their arguments both parties assume that the GPU/First Energy plan is an "ERISA-qualified" plan.

[3]I surmise that Debtor agreed to relief from the stay expecting that Judge Bratton would provide for equitable distribution of property by modifying the treatment of the marital residence. She did not expect, however, that Judge Bratton would compensate Respondent for Debtor's breach of the MSA by terminating Debtor's interest in Respondent's pensions. From Debtor's perspective, Judge Bratton incorrectly determined that the bankruptcy case limited his authority to alter Debtor's interest in the marital home. Debtor also asserts that the April 6 Order was issued in violation of the automatic stay. The within Motion was brought to obtain two rulings from this Court: first, clarification that the Court of Common Pleas was not prohibited by the bankruptcy filing from reconsidering the division of all marital property, including the marital residence; and second, enforcement of the automatic stay to protect Debtor's rights in Respondent's pensions.

exercise control over property of Debtor's Bankruptcy Estate. . . ." Hearings on the motion were held on June 13 and 27, 2011. The matter was taken under advisement and is now ripe for adjudication.[4]

## II. Discussion

Essentially, two questions are before the Court: (1) is Debtor's interest in the military and civilian pensions of her former spouse property of her bankruptcy estate, and (2) does the *Rooker-Feldman* doctrine bar this Court from entering an order enforcing the Stay Order? Because I have determined that Debtor's interest in Respondent's pensions is not property of her bankruptcy estate, it is unnecessary for me to determine whether the *Rooker-Feldman* doctrine is applicable.

*a. Property of the Estate*

The filing of a bankruptcy petition creates an estate comprised of "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). It is axiomatic that the Bankruptcy Code itself does not create property interests. "The language of Section 541, broad as it may be, does not expand a debtor's property interest beyond those delineated under state law." *Nichols v. Nichols (In re Nichols)*, 305 B.R. 418, 424 (Bankr. M.D. Pa. Feb. 3, 2004) (citing *Official Comm. of Unsecured Creditors v. R.F. Lafferty, Inc.*, 267 F.3d 340 (3d Cir. 2001)). Although bankruptcy law defines property of the estate, a bankruptcy court

---

[4]On February 15, 2012, the Superior Court of Pennsylvania issued its appellate decision affirming Judge Bratton's decision vacating the Pension Orders. (Superior Court Appellate Opinion, 1:10-bk-08586 Julia Yatishock Dyckman, Docket #105).

5

must look to state law to determine the nature and extent of a debtor's interest in specific property. *See In re Nichols*, 305 B.R. at 422 (citing *Butner v. US*, 440 U.S. 48, 54-55 (1979)).

Debtor was awarded an interest in two pension plans held by Respondent. Although Debtor's interest in each plan was recognized through a domestic relations order, differences between the two plans demand a distinct analysis for each pension.

### b. *The GPU/QDRO*

A qualified domestic relations order ("QDRO") establishes the right of an "alternate payee" to receive payments from a qualified pension plan and authorizes the trustee of the pension plan to distribute funds to the alternate payee. 29 U.S.C. § 1056(d)(3). A QDRO "creates or recognizes the existence of an alternate payee's right to, or assigns to an alternate payee the right to, receive all or a portion of the benefits payable with respect to a participant under a plan." 29 U.S.C. § 1056(d)(3)(B). The alternate payee must be a spouse, former spouse, child, or other dependent of a participant. *Id.* A QDRO is a legally permitted exception to ERISA's anti-alienation requirements and the general preemption clause. 29 U.S.C. §§ 1056(d)(3)(A), 1144(b)(7). An alternate payee is considered a plan beneficiary and is subject to the same restrictions on transfer as the original beneficiary. *See Boggs v. Boggs*, 520 U.S. 833, 847 (1997).

Section 541(c) provides that even if there is a provision in an agreement that restricts or conditions transfer of the debtor's interest in property, the interest becomes property of the estate. However, "a restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable. . ." 11 U.S.C § 541(c)(2). This provision enables a debtor to exclude from property of the estate any interest in a plan or trust

6

that includes a restriction on transfer enforceable under nonbankruptcy law, including federal law, such as ERISA. *Patterson v. Shumate*, 504 U.S. 753, 758 (1992).

Whether an ERISA-qualified pension is excluded from a plan participant's bankruptcy estate was settled by the Supreme Court in *Patterson v. Shumate*. However, there is disagreement among the lower courts as to whether an alternate payee's interest in an ERISA-qualified plan is likewise excluded from the alternate payee's bankruptcy estate. As noted by Debtor in her brief, in *Johnston v. Mayer (In re Johnston)*, 218 B.R. 813 (Bankr. E.D. Va. 1998), the bankruptcy court held that the funds payable to the alternate payee of an ERISA-qualifed plan of the debtor's former spouse through a QDRO became property of the debtor's bankruptcy estate. *See also In re Hageman*, 260 B.R. 852, 957 (Bankr. S.D. Ohio 2001). The *Johnston* and *Hageman* courts determined that pension benefits received as an alternate payee are property of the estate because these rights emanate from a QDRO and not from the pension plan itself. *In re Hageman*, 260 B.R. at 857-58 (citations omitted); *In re Johnston*, 218 B.R. at 815. Most courts addressing the issue, however, have determined that a debtor's interest in the undistributed funds of an ERISA-qualified plan is not property of the bankruptcy estate. *See Nelson v. Ramette (In re Nelson)*, 322 F.3d 541, 545 (8th Cir. 2003). In *Nelson*, the Court of Appeals for the Eighth Circuit rejected the reasoning of *Johnston* and *Hagemen* that ERISA's anti-alienation provision does not apply when the interest in a pension is obtained through a QDRO. The Eighth Circuit noted that the purpose of ERISA is to extend the same benefits to an alternate payee afforded to plan participants. 322 F.3d at 544-45 (citing *Boggs,* 520 U.S. at 845).

> Congress, via the QDRO provisions, intended that all persons conferred beneficiary status via a QDRO be given the same protections ERISA affords to plan participants. . . . Therefore, a person who acquires an interest in an ERISA

7

plan via a QDRO can exclude that interest from a bankruptcy estate in the same way that the plan participant [himself] could have excluded it.

*In re Nelson*, 322 F.3d at 545; *accord Ostrander v. Lalchandani (In re Lalchandani)*, 279 B.R. 880 (B.A.P. 1st Cir. 2002) (adopting the reasoning of *Nelson v. Ramette (In re Nelson)*, 274 B.R. 789 (B.A.P. 8th Cir. 2002), that pension benefits received pursuant to a QDRO from an ERISA-qualified plan are not property of the bankruptcy estate); *In re Farmer*, 295 B.R. 322, 324-25 (Bankr. W.D. Wisc. 2003) (holding that debtor's interest in former spouse's pension plan was excluded from bankruptcy estate because debtor enjoyed same protections as a plan beneficiary); *In re Hthiy*, 283 B.R. 447, 451 (Bankr. E.D. Mich. 2002) (holding that a property interest in a former spouse's ERISA-qualified retirement plan is excluded from property of the estate under § 541(c)(2)).

In the within case, the parties do not dispute that the GPU/First Energy pension plan is ERISA-qualified. Accordingly, Debtor's interest in the plan through the GPU/QDRO is excluded from her bankruptcy estate.

  c. *The Military DRO*

The Uniformed Services Former Spouses' Protection Act (hereafter, "USFSPA") provides that, ". . . a court may treat disposable retired pay payable to a member . . . either as property solely of the member or as property of the member and his spouse in accordance with the law of the jurisdiction of such court." 10 U.S.C. § 1408(c)(1). Therefore, the USFSPA leaves the decision to the states whether military retirement benefits will be subject to equitable distribution and shared with a former spouse. The Pennsylvania divorce code permits military retirement benefits to be equitably distributed in a divorce action and only excludes the division

8

of military disability compensation. 23. Pa. C.S.A. § 3501(a)(6); *Vaughn v. Vaughn*, 370 Pa. Super. 333, 335, 536 A. 2d 431, 432 (1988).

"In Pennsylvania, payments made under the USFSPA become property of the spouse to whom they are awarded at the time of the decree." *In re Nichols*, 305 B.R. at 423 n.5 (citing *Kan v. Unemployment Comp. Bd. of Review*, 109 Pa. Cmwlth. 184, 187, 530 A.2d 1023, 1024 (1987)).[5] Therefore, the Military DRO recognized Debtor's interest in Respondent's military pension as her separate property. This is a distinct issue, however, from whether her interest in the Military DRO constitutes property of her Chapter 13 estate. Under 11 U.S.C. § 541(c)(2), a debtor's interest in a plan or trust that contains a transfer restriction enforceable under nonbankruptcy law is not property of the estate. While the holding in *Patterson v. Shumate* addressed the status of ERISA-qualified plans, finding that they were not estate property, similar reasoning has been applied to non-ERISA plans with similar restrictions. *See Dobin v. Hill (In re Hill)*, 342 B.R. 183 (Bankr. D. N.J. 2006) (holding that civil service pension is exempt from legal process under federal law and, thus, is excluded from the bankruptcy estate).

Section 1408(c)(2) of title 10 provides that:

Notwithstanding any other provision of law, this section does not create any right, title, or interest which can be sold, assigned, transferred, or otherwise disposed of (including by inheritance) by a spouse or former spouse. . . .

10 U.S.C § 1408(c)(2). Similar to the anti-alienation provisions of ERISA, the USFSPA bars a former spouse from alienating her interest in a military pension. Section 1408(c)(2) imposes a transfer restriction enforceable under nonbankruptcy law and, thus, removes from the bankruptcy

---

[5]Under Pennsylvania state law, military pension benefits awarded to a former spouse become the spouse's separate property upon entry of a domestic relations order by the state court. *See In re Nichols*, 305 B.R. at 423 n.5.

9

estate Debtor's interest in her former husband's military pension. On the date of the bankruptcy petition, Debtor's interest in the military pension was her sole and separate property under the USFSPA. Because her interest in the plan was subject to restrictions on transfer, it did not become property of her bankruptcy estate. *See In re Satterwhite*, 271 B.R. 378, 382 (Bankr. W.D. Mo. 2002) (holding that the USFSPA provides a debtor spouse with a proprietary, inalienable interest in the former spouse's military pension that is excluded from the bankruptcy estate under *Patterson v. Shumate*.)

Therefore, Debtor's interest in two of Respondent's pension plans obtained through the GPU/QDRO and the Military DRO is not property of Debtor's bankruptcy estate.

### III. Conclusion

The November 17 Order lifted the automatic stay to permit Respondent to proceed with supplemental divorce and equitable distribution claims he had asserted against Debtor pre-petition. The Order also provided that the stay would remain in effect "to prevent [Respondent] from taking any action to obtain possession of or to exercise control over property of Debtor's Bankruptcy Estate pending further order of this Court." The automatic stay remained in place to bar actions against property of the bankruptcy estate, but it did not extend to property excluded from the estate. The relief granted by Judge Bratton in the April 6 Order addressed Debtor's interest in Respondent's pensions, neither of which constitute property of Debtor's bankruptcy estate. Therefore, while it is clear that Judge Bratton could have pursued other avenues to readjust the distribution of marital assets between the parties given Debtor's breach of the MSA, the April 6 Order terminating Debtor's interest in Respondent's pensions did not affect property

of the bankruptcy estate and, thus, did not violate this Court's November 17 Order. An appropriate order follows.

**By the Court,**

_____
Mary D. France
Chief Bankruptcy Judge

Date: April 16, 2012